**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED SURETY & INDEMNITY COMPANY,<br><br>**Plaintiff,**<br><br>v.<br><br>JOSE C. APONTE-DALMAU, et al.,<br><br>**Defendants.** | **CIVIL NO.** 11-1902 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Plaintiff United Surety and Indemnity Company's ("Plaintiff" or "USIC") filed this suit against Jose C. Aponte-Dalmau ("Aponte-Dalmau") and the Municipality of Carolina (the "Municipality") (collectively, "Defendants") claiming violations to the First Amendment, U.S. Const. amend. I, and Fourteenth Amendment, U.S. Const. amend. XIV, § 1. (Docket No. 1). After dismissing Plaintiff's Due Process claim, the Court ordered the parties to file supplemental briefs on Plaintiff's First Amendment and Equal Protection claims. (Docket No. 44). Before the Court are the parties' motions for summary judgment on these

Civil No. 11-1902 (JAG)                                          2

claims.[1] (Docket Nos. 59, 65) For the following reasons, Defendant's motion is **GRANTED** and Plaintiff's motion is **DENIED.**

## STANDARD OF REVIEW

A motion for summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party, and it is material if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party . . . ." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citing DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). The nonmovant must demonstrate "through submissions of evidentiary quality[] that a trial worthy issue persists."

---

[1] After partial judgment was entered dismissing Plaintiff's Due Process claim, the Court informed the parties it intended to address these claims via summary judgment, (Docket No. 44); see Fed. R. Civ. P. 56(f) ("after giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant").

Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).

In evaluating a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). It is important to note that, throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## BACKGROUND[2]

Plaintiff, a surety organized under the laws of the Commonwealth of Puerto Rico ("Commonwealth"), is licensed to

---

[2] As a threshold matter, Defendants fail to comply with the most basic requirement of a motion for summary judgment. To the extent that Defendant's statement of uncontested facts is not properly supported by citations to the record, it shall not be considered by the Court. See Local Rule 56(e)("[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment"). However, Plaintiff joins Defendant in noncompliance of the Local Rules. While Plaintiff cites the relevant material, it repetitively fails to cite the specific page or paragraph. See id. ("[a]n assertion of facts set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."). This behavior should not be tolerated, as it places on the Court the burden to ferret through the record.

issue bid bonds[3] in the Commonwealth. (Plaintiff's Statement of Uncontested Facts, Docket No. 60, ¶ 1). For many years, Plaintiff issued more than two hundred bid bonds to various contractors that presented bids to the Bidding Board of the Municipality of Carolina for public works and improvement. (Id. ¶ 5).

On April 24, 2009, the Municipality and R-G Premier bank ("RG") filed suit against Plaintiff, among others, seeking the specific performance of a contract relating to the construction of a housing complex known as the Roberto Clemente Project for which Plaintiff had issued a payment and performance bond on behalf of its client. (Id. ¶ 7). The state trial court granted summary judgment in favor of the Municipality, and ordered Plaintiff to comply with the principal's contract and finish the construction of the Roberto Clemente Project. (Id. ¶ 9). The Puerto Rico Court of Appeals affirmed the Court of First Instance's decision, and the Supreme Court of Puerto Rico denied USIC's petition for writ of certiorari. (Id. ¶ 10).

In 2010, the Municipality's Bidding Board began to reject bid bonds issued by insurers who were not in "good standing" with the Municipality, "such as those that have failed in their

---

[3] In a bidding process, sureties issue bid bonds to the project owner as a guarantee that the winning bidder will complete the contract under the terms of the bid.

contractual obligations to (sic) the Municipality." (Id. ¶ 11; Sworn Statement of Mr. Manuel Mangual, Docket No. 27-2, ¶ 7). The Municipality's new policy was, in fact, enacted in response to USIC's noncompliance with the judgment issued against it. (Sworn Statement of Mr. Manuel Mangual, Docket No. 27-2, ¶¶ 6-7).[4] Pursuant to this new policy, the Municipality began refusing bonds provided by USIC, stating to USIC's clients that USIC was not in good standing with the Municipality. (Id. ¶ 12). The Municipality "specifically conveyed to USIC that [its] bonds and other instruments would not be accepted by the Municipality until full compliance with the judgment had been effected." (Docket No. 27-2, ¶ 8).

## ANALYSIS

### I.   **First Amendment**

Plaintiff presses a retaliation claim against Defendants, alleging that Defendants rejected Plaintiff's bid bonds only because Plaintiff chose to defend itself in the state court

---

[4] In his sworn statement, Manuel Mangual, Administration Manager of the Municipality and Director of the Municipality's Bidding Board, states that "in this particular context [that of Plaintiff's noncompliance with the judgment issued against it] . . . the Municipality decided in 2010 not to accept bonds or other instruments issued by insurers that are not in good standing with the Municipality, such as those that have failed in their contractual obligations with the Municipality." (Docket No. 27-2, ¶ 7). The Court notes that this sworn statement although not cited by Defendants, is cited by Plaintiff and is part of the record. As such, it is properly considered by the Court.

proceedings relating to the Roberto Clemente Project contract.[5] As noted above, Plaintiff lost both at the trial level and on appeal.

In order to establish a retaliation claim under the First Amendment, "[a] plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct as a substantial or motivating factor in the adverse action," D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012) (citing González-Droz v. González-Colón, 660 F.3d 1, 16 (1st Cir. 2011)); see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 11 (1st Cir. 2005)(plaintiff must "show that the adverse action was substantially attributable to the [protected conduct] and not some other (unrelated) reason"). However, after Plaintiff has established his retaliation claim, "[t]he defendant may then avoid a finding of liability by showing that it would have reached the same decision even in the absence of the protected conduct." D.B. ex rel. Elizabeth B., 675 F.3d at 43 (citing Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004)). This is

---

[5] The Court notes that is unsettled whether disappointed bidders or applicants for new government contracts may bring forth cognizable First Amendment retaliation claims. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 9 (1st Cir. 2005). But we need not resolve that question as Plaintiff's cause of action fails on other grounds.

commonly known as the <u>Mt. Healthy</u> defense. <u>Mt. Healthy City Sch.</u>
<u>Dist. Bd. Of Educ. V. Doyle</u>, 429 U.S. 274, 287 (1977).

The Court need not decide whether Plaintiff complies with
the first three prongs because the record amply supports
Defendants' <u>Mt. Healthy</u> defense.[6] The record shows that even
without Plaintiff's challenges in the state court case, the
Municipality would have rejected Plaintiff's bid bonds until
full compliance with the Roberto Clemente project (pursuant to
the state court judgment) had been effected. Simply put, the
Municipality here avoided contracting with a surety who had yet
to fulfill a previous obligation.

The <u>Mt. Healthy</u> defense "deals with employment actions
driven by mixed motives, and provides that where there are both
lawful and unlawful reasons for the adverse employment action,
if the lawful reason alone would have sufficed to justify the
[action], then the employee cannot prevail." <u>Soto-Padró v.</u>
<u>Public Buildings Authority</u>, 675 F.3d 1, 6 (1st Cir. 2012)
(internal quotation marks removed) (citing <u>McKennon v. Nashville</u>
<u>Banner Pub. Co.</u>, 513 U.S. 352, 359 (1995)). While the Autonomous
Municipalities Act does not expressly authorize the Municipality
to reject bid bonds, it does explicitly authorize it to reject

---

[6] The Court notes that, according to First Circuit precedent, "[a]s a general matter, this type of conduct—seeking to avail oneself of judicial remedies—is constitutionally protected." <u>Centro</u>, 406 F.3d at 10.  Here, however, the case is slightly different since Plaintiff was a defendant in the state case and was, moreover, unsuccessful in its appeal of the case.

bidders if benefits the public interest. See P.R. Laws. Ann. tit. 21 § 4506 (2009)("[t]he board may adjudicate to a bidder who is not necessarily the lowest or the highest, as the case may be, if it is in benefit of the public interest"). The Municipality argues that it was in the public's interest to reject bid bonds from Plaintiff, considering its lack of compliance with the judgment, since another deficient bond could jeopardize the Municipality's funds. See Cancel v. Municipio de San Juan, 1 P.R. Offic. Trans. 416, 422 (1973)(stating that the state provisions regulating contracts with the government are aimed at protecting the integrity of the public fisc). The Court thus concludes that Defendants acted well within their discretion in safeguarding the public interest.

## II.  Equal Protection

Next, Plaintiff brings an Equal Protection challenge under a "class-of-one" theory. Under this theory, Plaintiff must show that it "has been treated differently from other similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiff alleges that the Municipality arbitrarily discriminated against it by rejecting its bid bonds while accepting bid bonds from its competitors.

Civil No. 11-1902 (JAG)                                             9

As a threshold matter, it is doubtful that the "class-of-
one" theory is even applicable in this case.[7] In <u>Engquist v.
Oregon Department of Agriculture</u>, the Supreme Court held that
"the class-of-one theory of equal protection does not apply in
the public employment context." 553 U.S. at 598. The Eleventh
Circuit subsequently applied this holding to government
contractors, reasoning that "decisions involving government
contractors require a broad discretion that may rest on a wide
array of factors that are difficult to articulate and quantify."
<u>Douglas Asphalt Co. v. Qore, Inc</u>, 541 F.3d 1269 (11th Cir.
2008)(internal quotation marks omitted); <u>see also</u> <u>Board of
County Commissioners v. Umbehr</u>, 518 U.S. 668, 674 (1996) ("[t]he
government needs to be free to terminate both employees and
government contractors for poor performance, to improve the
efficiency, efficacy, and responsiveness of service to the
public").

The situation here is slightly different, as the bid bond
presented by the surety is meant to insure the government
contract in question. We, however, do not see why the reasoning
in <u>Douglas</u> would not be applicable. The Municipality should also
have broad discretion in contracting with sureties, given their
important role in the contract. Needless to say, the surety's
performance, similar to that of the contractor, affects the

---

[7] This issue is not discussed in the parties' briefs.

Civil No. 11-1902 (JAG)                                        10

efficacy and efficiency of the service to the public. <u>See</u> <u>Umbehr</u>, 518 U.S. at 674. For this reason, <u>Douglas</u> is applicable and the Court could dismiss Plaintiff's class-of-one claim on this alone.

Nevertheless, even if Defendants' actions do not fit the government-as-an-employer scheme, it is well-established that "plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently." <u>Cordi-Allen v. Conlon</u>, 494 F.3d 245, 250-51 (1st Cir. 2007) (citing <u>Buchanan v. Maine</u>, 469 F.3d 158, 178 (1st Cir. 2006)). "This requirement demands more than lip service." <u>Cordi-Allen</u>, 494 F.3d at 251 (citing <u>Discovery House, Inc. v. Consol. City of Indianapolis</u>, 319 F.3d 277, 283 (7th Cir. 2003)). "It is meant to be a very significant burden." <u>Id.</u> Plaintiff has only provided the Court with the generic assertion that Defendants are favoring its competitors, without pointing to *any* specific instances where persons similarly situated were being treated differently. Plaintiff did not identify a single instance in which other corporations that, like Plaintiff, had previously defaulted on projects with the municipality were being treated differently. <u>Douglas</u>, 541 F.3d at 1275 (stating that there was no indication in the complaint that the comparator had a similar

Civil No. 11-1902 (JAG)                                              11

history    of    poor    performance    with    the    governmental
decisionmaker). Because Plaintiff fails to carry its burden, its
class-of-one claim fails.

### CONCLUSION

In view of the foregoing, Plaintiff's motion (Docket No. 59) is **DENIED** and Defendant's motion is **GRANTED** (Docket No. 65). Plaintiff's First Amendment and Equal Protection claims are dismissed **with prejudice**. Judgment shall be entered in accordance with this opinion.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of March, 2014.

                              S/ Jay A. Garcia-Gregory
                              JAY A. GARCIA-GREGORY
                              United States District Judge